IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTANDER CONSUMER USA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-01090-N |
| | § | |
| MIAMI AUTOMOTIVE RETAIL, INC., | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant Miami Automotive Retail, Inc. (d/b/a Brickell Motors) motion to dismiss for lack of jurisdiction, or in the alternative, transfer venue [8]. The Court lacks personal jurisdiction Brickell Motors. Rather than dismiss for lack of personal jurisdiction, the Court transfers this action to the Southern District of Florida under 28 U.S.C. § 1406(a).

## I. ORIGINS OF THE MOTION

This case arises out of a contractual relationship between Brickell Motors and Plaintiff Santander Consumer USA, Inc. ("Santander"). *See* App. to Notice of Removal Ex. A (hereafter "Pl.'s Orig. Pet.") [1-1]. Santander is in the business of buying automobile retail installment sales contracts from automobile dealers like Brickell Motors. *Id.* ¶ 6. Santander is incorporated in Illinois and has its principal place of business in Dallas County. *Id.* ¶ 2. Brickell Motors is a retail car dealership that is incorporated in Florida and has its principal place of business in Miami, Florida.

ORDER – PAGE 1

Santander and Brickell Motors entered into a Non-Recourse Dealer Retail Agreement (the "Agreement") that governed the business relationship between the parties. *Id.* ¶ 7. The Agreement provides that Brickell Motors could submit proposals to sell or assign retail installment sales contracts to Santander, and Santander had the option to purchase them. *Id.* ¶ 9. Santander now claims Brickell Motors breached that Agreement by making certain misrepresentations about customers and vehicles, and failing to pay Santander money owed under certain terms of the Agreement. *Id.* ¶ 15. Specifically, Santander claims the Agreement required Brickell Motors to pay Santander the amount collected for Additional Products and Services ("APS") sold by Brickell Motors to a retail customer, that the retail customer later canceled after the sale of the contract to Santander. *Id.* ¶ 8. Santander alleges Brickell Motors sold it fifty seven contracts where the retail customer subsequently canceled the APS, and Brickell Motors never paid Santander the sum owed. *Id.* ¶ 8. Next, Santander claims Brickell Motors misrepresented the condition of the vehicle on sixty five retail installment sales contracts. Santander also claims Brickell Motors wrongfully withheld money due to it under the Dealer Participation Contracts for thirty one contracts. *Id.* ¶ 12. Finally, Santander claims Brickell Motors misrepresented customer information, including income, employment, and other credit information, for twenty five contracts. *Id.* ¶ 14.

Santander originally brought suit against Brickell Motors in state court. Brickell Motors subsequently removed the case to this Court and now moves to dismiss for lack of personal jurisdiction or, in the alternative, transfer to the Southern District of Florida. *See* Mot. to Dismiss [8].

## II. THE RULE 12(B)(2) STANDARD

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. – Tyler 2001, no pet.).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's – and thus a federal court's – jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The minimum

contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472 (alteration in original).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 415 (1984) (citations omitted). A court may assert general jurisdiction over a foreign corporation "to hear any and all claims against" it only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive "as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). *Accord Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). Under either a general or specific jurisdiction analysis, however, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. "[W]hether the minimum contacts are sufficient to justify

ORDER – PAGE 4

subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Santander, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d 214 at 220 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citing *Thompson*, 755 F.2d at 1165). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### III. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BRICKELL MOTORS

As a threshold matter, the Court notes that this is not the first time it is presented with the question of whether it has personal jurisdiction over a nonresident car dealership involved in similar litigation with Santander. *See Santander Consumer USA, Inc. v. Anchor Motor Co.*, 2013 WL 10914281, at *3 (N.D. Tex. 2013) (Godbey, J.). Nor is the Northern District of Texas unfamiliar with cases filed by Santander against nonresident car dealerships over alleged breaches of Non-Recourse Dealer Retail Agreements. *See, e.g.*, *Santander Consumer USA, Inc. v. Union Pontiac-GMC, Inc.*, 2017 WL 2362046, at *2 (N.D. Tex. 2017). It is true that Courts considering the same issue of personal jurisdiction have reached opposite conclusions. *Compare Santander Consumer USA, Inc. v. Car Smart, Inc.*, 2010 WL 3703848 (N.D. Tex. 2010) (finding the court had jurisdiction) *with Santander Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520 (N.D. Tex. 2011) (holding court did not have jurisdiction). However this Court previously concluded, when presented with nearly identical circumstances, that the Court lacked personal jurisdiction over the nonresident car dealership. Since then, at least one other Court in this District has likewise determined that it did not have personal jurisdiction over a nonresident car dealership. *See Union Pontiac-GMC*, 2017 WL 2362046, at *2. Because Santander does not allege sufficient contacts with the state of Texas to satisfy its burden, the Court is not persuaded to deviate from its prior holding.

First, the Court notes the parties do not dispute that the Court lacks general jurisdiction over Brickell Motors. Accordingly, the Court only analyzes whether it has

specific jurisdiction over Brickell Motors. The Fifth Circuit applies a three-step inquiry to determine if a court has specific jurisdiction over a party:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The plaintiff bears the burden to establish the first two prongs, after which the burden shifts to the defendant to establish the third. *Id.* Thus the Court must determine whether Santander demonstrated that Brickell Motors has minimum contacts with Texas *and* that this action arises out of those contacts.

Santander contends the Court has personal jurisdiction over Brickell Motors because Brickell Motors "voluntarily and intentionally established a substantial and ongoing relationship with Plaintiff and the state of Texas and has purposefully availed itself of the protections of Texas law in invoking Texas law to govern the parties' contractual relationship." *See* Pl.'s Orig. Pet. ¶ 4. As the Court has previously noted, the Agreement itself is insufficient to create specific jurisdiction. *See Anchor*, 2013 WL 10914281, at *4. It is well established that a nonresident defendant's contract with a resident plaintiff does not establish minimum contacts. *See, e.g.*, *Burger King*, 471 U.S. at 478; *Moncrief Oil*, 481 F.3d 309, 311 (5th Cir. 2007). Nor does the negotiation of the contract itself "constitute the required purposeful availment of the benefits and protections of Texas law." *Moncrief Oil*, 481 F.3d at 311 (citing *Holt Oil*, 801 F.2d at 778). While the choice of law clause is relevant

to a personal jurisdictional analysis, it is not determinative. *Electrosource, Inc. v. Horizon Battery Techs, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999) ("[A] choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction."). Thus, the Agreement, even in light of its choice of law clause, is insufficient by itself to demonstrate minimum contacts.

Nor are Brickell Motors' collective contacts sufficient to trigger specific jurisdiction. "In a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Burger King*, 471 U.S. at 479). Analysis of these factors demonstrates that Brickell Motors' Texas contacts are insufficient to warrant specific jurisdiction.

First, there is no indication there was any prior negotiation between the parties. Based on the allegations, the parties never did business with one another prior to the Agreement. Moreover, Brickell Motors contends the Agreement itself was not subject to extensive negotiations. *See* Br. in Support of Mot to Dismiss 11 [9]. Accordingly, the parties' prior negotiations offer little if any support for the conclusion that Brickell Motors purposefully established minimum jurisdictional contacts with Texas.

Second, the Agreement itself does not envision any fixed future consequences. The Agreement outlined a framework under which Brickell Motors had the option to collect the necessary customer information and documents for a proposal for Santander's review. Santander, then, had the option to purchase the contract. Thus neither party was required "to

perform, let alone perform in Texas." *Union Pontiac-GMC*, 2017 WL 232046 at *4. Unlike the franchise agreement at issue in *Burger King,* the Agreement in this case does not specify any term of dealings or contemplate any future consequences like royalties and rent payments. Accordingly, the Agreement's silence as to future consequences also suggests that Brickell Motors did not establish minimum contacts with Texas.

Third, the terms of the contract themselves do not a demonstrate strong link to Texas. Other than the Texas choice of law clause, there is no mention of Texas or actions performed there. In fact, the only location discussed in the Agreement is the dealership, which is located in Florida, where the consumer contracts at issue originated. The focus on the dealership confirms that Florida "is clearly the center of the parties' activities." *Shults*, 2011 WL 2601520, at *4. Accordingly, the terms also do not suggest Brickell Motors established minimum contacts with Texas.

Fourth, the course of dealing between the parties was reasonably limited. It is true that Brickell Motors sold Santander 178 contracts under the Agreement. However the parties have not engaged in further negotiations. Nor do the allegations suggest the parties have any significant contact with each other to establish the type of sustained contractual relationship that is necessary to establish minimum contacts such that Brickell Motors could have reasonably anticipated being haled into court in Texas. *See Burger King*, 471 U.S. at 465 (discussing a substantial and continuing relationship between Burger King and franchisees where Burger King imposed "standards and rigid regulation" and "work[ed] directly with its franchisees to resolve major problems"). As discussed below, the only contact Brickell Motors and Santander had was the electronic transfer of the proposal and if accepted by

ORDER – PAGE 9

Santander, the physical mailing of the documents to Santander's office in Tennessee. *See* App. to Def.'s Mot to Dismiss Ex. 2 ("Andreus Aff.") ¶¶ 6, 8–9 [10-2]. Accordingly, the parties course of dealing likewise does not suggest Brickell Motors established minimum contacts with Texas.

The main thrust of Santander's argument is that a state court recently decided to the contrary. *See DJRD, LLC v. SKOPOS Fin., LLC*, 2016 WL 3912769 (Tex. App. – Dallas, 2016) (no pet.). First, the Court notes that the state court decision's procedural posture was different than the motion to dismiss or transfer presented in this case. *Id.* at *2 (noting that because there were no findings of fact by the trial court, the appellate court "impl[ied] all findings of fact necessary to support the trial court's findings that are supported by the evidence"). Nor is that case binding on this Court. *See Memorial Hosp. Sys. v. Blue Cross & Blue Shield of Arkansas*, 830 F. Supp. 968, 971 (S.D. Tex. 1993) ("[A] federal court is not bound by the decision of a state court regarding the requirements of federal due process."). Moreover, *Skopos* was factually distinct from this case. The *Skopos* court concluded that the nonresident dealership reached out to Texas by soliciting Santander's purchase of the retail installment sales contracts. But based on the allegations in this case, Brickell Motors did not reach out to Texas. In this case, Brickell Motors claims it entered loan information into an electronic system called Dealertrack from its Florida location. *See* Def.'s Reply 9 [18]. Santander claims the proposals were sent via electronic communication. *See* App. to Pl.'s Am. Resp. to Mot. to Dismiss Ex. A, ¶ 7 [15-1]. Even construing this factual dispute in favor of Santander, and assuming the Brickell Motors sent the proposals via electronic communication to a Santander employee in Dallas, that would not be enough to establish

ORDER – PAGE 10

minimum contacts. *See Anchor*, 2013 WL 10914281, at * 4–5. Moreover, Brickell Motors sent all documents related to the loans to Santander's office in Memphis, Tennessee, not to Texas. *See* Andreus Aff. ¶¶ 6, 8–9. Accordingly, the Court is not persuaded that this case is sufficiently factually similar to *Skopos*, regardless of its precedential value.

Considering all of these factors together and the parties' interactions as a whole, the Court concludes Santander has not carried its burden to demonstrate that Brickell Motors has minimum contacts with Texas. The interactions between the parties that Santander argues subject Brickell Motors to this Court's specific jurisdiction rest on "the mere fortuity that [Santander] happens to be a resident of the forum." *Anchor*, 2013 WL 10914281, at *6 (quoting *Holt Oil*, 801 F.2d at 778). Because Santander has not met its burden of establishing a prima facie case that specific personal jurisdiction is warranted, the Court must decide whether it should dismiss for lack of personal jurisdiction or transfer the action to the Southern District of Florida.

### IV. THE COURT TRANSFERS THE CASE

The Court transfers the case to the Southern District of Florida. The Fifth Circuit has recognized that section 1406 allows the Court to transfer a case "where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits," including the lack of personal jurisdiction. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). "Courts generally prefer transfer to dismissal." *Wolf Network, LLC v. AML Diagnostics, Inc.*, 2016 WL 1357742, at *3 (N.D. Tex. 2016). Thus when venue is improper, a court may, in the interest of justice, transfer the case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Venue is proper in Florida as Brickell

ORDER – PAGE 11

Motors is incorporated in Florida and likewise has its principal place of business in Miami, Florida. *See* 28 U.S.C. § 1391(b). Moreover, a substantial part of the events giving rise to the claim occurred in Florida. *Id.* Accordingly, the Court transfers the case to the Southern District of Florida, Miami Division.

## CONCLUSION

Based on the foregoing, while the Court lacks personal jurisdiction over the Defendant, the Court concludes it is in the interest of justice to transfer the case pursuant to 28 U.S.C. § 1406(a). Accordingly, the Court grants the motion to transfer and orders that the case be transferred to the United States District Court for the Southern District of Florida, Miami Division.

Signed June 26, 2017.

_____
David C. Godbey
United States District Judge